Filed 1/17/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G054483 |
| v. | (Super. Ct. No. 14NF1456) |
| MARIA INES PINEDA AREVALO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Robert Alan Knox, Judge. Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Eric A. Swenson, Supervising Attorney General, Kristine Gutierrez and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Maria Arevalo of possessing methamphetamine for sale (Health & Saf. Code, § 11378). The trial court suspended execution of sentence and granted three years formal probation on several conditions. On appeal, Arevalo contends the probation condition requiring her to maintain a residence approved by her probation officer is unconstitutionally overbroad and violates her right to travel and freedom of association. She also requests that this court independently review the in camera hearing of her *Pitchess* motion. We find her first contention lacks merit, and the Attorney General agrees this court should review the confidential records. We have done so, and we affirm the judgment.

FACTS

In 2014, Orange County Sheriff's Department Investigator Ashra Abdelmuti conducted a "controlled buy" between a confidential informant (CI) and Arevalo. After the CI purchased methamphetamine from Arevalo, deputies obtained a search warrant for Arevalo, her vehicle, and her apartment.

Abdelmuti spoke to Arevalo at her mother's house in Anaheim. After learning the deputies intended to search her apartment, Arevalo gave them the keys. Inside Arevalo's apartment, deputies found 5.6 ounces of methamphetamine, two large digital scales, a box of empty plastic baggies, a plastic sifter, and $1,116 in cash. The methamphetamine had a street value between $5,314 and $7,086. Abdelmuti opined the items seized indicated the methamphetamine was possessed for sale.

Arevalo testified in her defense. She stated she was afraid of her ex-boyfriend Daniel Jose Leon. Leon possessed two guns, and Arevalo once saw him hit a friend in the head with a gun.

Arevalo ended her relationship with Leon in the middle of 2013, but during their relationship, she had borrowed $1,500 from him and had not repaid the loan. In January 2014, Arevalo testified she was employed and dating someone new. Arevalo testified Leon was jealous about her new relationship and angry that she had not repaid

2

him the money she owed. Arevalo claimed Leon gave her the methamphetamine and drug-related items detectives found in her apartment, and that he forced her to sell methamphetamine as a way to repay the money she owed him. She did not want to take the drugs but agreed to do so because she believed she and her family (including her then five-year-old daughter) were in danger. Leon threatened Arevalo by putting a nine-millimeter gun to her head. Leon was sometimes physically violent towards Arevalo, and he said he would hurt her and her daughter if she reported anything to the police.

Arevalo admitted she sold drugs to the CI. She drove her car to deliver the drugs but she did not collect any money from the CI. Arevalo claimed the buyer wanted to give the money directly to Leon. She explained the money found in her apartment was not related to selling drugs, but was money she was saving "for [her] new visa." She admitted she did not ask her family for the money to repay Leon. She also never told her family or the police about Leon's threats.

Deputies arrested Leon. During their search of his apartment, they found a nine-millimeter gun and a bag of ammunition.

DISCUSSION

I. *Probation Condition*

Arevalo maintains the probation conditions requiring her to maintain a residence approved by her probation officer are unconstitutionally overbroad and must be stricken. The Attorney General maintains the condition is narrowly tailored to serve the state's interests in rehabilitation and reformation. We conclude the approval condition is constitutionally valid.

Generally, trial courts are given broad discretion in fashioning terms of probation in order to foster the reformation and rehabilitation of the offender while protecting public safety. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) Therefore, we review the imposition of a particular condition of probation for abuse of that discretion. "As with any exercise of discretion, the court violates this standard when it

imposes a condition of probation that is arbitrary, capricious or exceeds the bounds of reason under the circumstances. [Citation.]" (*People v. Jungers* (2005) 127 Cal.App.4th 698, 702.)

However, we review constitutional challenges under a different standard. Arevalo's claim the probation term is unconstitutionally overbroad presents a question of law, which we review de novo. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888-889.) Not all terms that require a defendant to give up a constitutional right are per se unconstitutional. (*People v. Mason* (1971) 5 Cal.3d 759, 764-765, overruled on a different point as stated in *People v. Lent* (1975) 15 Cal.3d 481, 486, fn. 1.) "If a probation condition serves to rehabilitate and protect public safety, the condition may 'impinge upon a constitutional right otherwise enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens."'" (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1355.)

A probation condition cannot be unconstitutionally overbroad. "A restriction is unconstitutionally overbroad . . . if it (1) 'impinge[s] on constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.' [Citations.] The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

Although conditions requiring prior approval of a probationer's residence may affect the constitutional rights to travel and freedom of association (*People v. Bauer* (1989) 211 Cal.App.3d 937, 944 (*Bauer*)), courts have the authority to do so if there is an indication the probationer's living situation contributed to the crime or would contribute to future criminality. (*People v. Soto* (2016) 245 Cal.App.4th 1219, 1228.) A trial court may impose probation conditions that place limits on constitutional rights if they are

4

reasonably necessary to meet the twin goals of rehabilitation of the defendant and protection of the public. (*Bauer, supra,* 211 Cal.App.3d at pp. 940-941.)

Arevalo relies upon the *Bauer* case, in which the appellate court struck a residence approval condition. (*Bauer, supra*, 211 Cal.App.3d at p. 945.) A jury found defendant guilty of false imprisonment and simple assault. (*Id.* at p. 940.) The trial court imposed the restriction to prevent defendant from living with his parents because they were overprotective. (*Id.* at p. 944.) Nothing in that record suggested defendant's home life contributed to the crimes or that his residence was reasonably related to future criminality. (*Ibid.*) Defendant had no prior criminal history and the restriction was not proposed by the probation department. (*Id.* at p. 943.) While noting probation conditions requiring approval before traveling or moving can be appropriate under certain circumstances, the appellate court determined the restriction in this case impinged on defendant's constitutional right to travel and freedom of association. "Rather than being narrowly tailored to interfere as little as possible with these important rights, the restriction is extremely broad. The condition gives the probation officer the discretionary power, for example, to forbid [defendant] from living with or near his parents—that is, the power to banish him. It has frequently been held that a sentencing court does not have this power. [Citations.]" (*Id.* at p. 944-945.)

Here, there is nothing in the record to suggest the approval condition was designed to banish Arevalo from a particular neighborhood or stop her from living where she desires. (See *People v. Stapleton* (2017) 9 Cal.App.5th 989, 995 (*Stapleton*) [distinguishing *Bauer* because "residence condition imposed here is not a wolf in sheep's clothing; it is not designed to banish defendant"].) Moreover, the legal landscape has changed since publication of the *Bauer* opinion. Our Supreme Court stated in *People v. Olguin* (2008) 45 Cal.4th 375 (*Olguin*), "A probation condition should be given 'the meaning that would appear to a reasonable, objective reader.' [Citation.]" (*Id.* at p. 382.) The condition here presumes a probation officer will not withhold approval for irrational

5

or capricious reasons (*Id.* at p. 383) and will appreciate there are limited housing options in Orange County. The approval condition allows the probation officer to supervise Arevalo's residence, because the nature of her crime suggests a need for oversight. The probation officer can limit her exposure to sources of temptation for future criminality by, for example, not approving residences in close proximity to other drug dealers. Living in an area having easy access to drug suppliers could negatively affect her rehabilitation. And, if the probation officer disapproves of a particular residence for any arbitrary reason, Arevalo may file a petition for modification of her probation condition. (Pen. Code, §§ 1203.2, subd. (b)(1), 1203.3, subd. (a); see *People v. Keele* (1986) 178 Cal.App.3d 701, 708 [trial court retains jurisdiction to review probation officer's actions].)

We are also mindful of the legal tenet, "[P]robation is a privilege and not a right, and adult probationers, in preference to incarceration, may validly consent to limitations upon their constitutional rights. [Citation.] For example, probationers may agree to warrantless search conditions or restrictions on their constitutional right of association. [Citations.]" (*Stapleton*, *supra,* 9 Cal.App.5th at p. 994.) "If a defendant believes the conditions of probation are more onerous than the potential sentence, he or she may refuse probation and choose to serve the sentence. [Citations.]" (*Olguin, supra,* 45 Cal.4th at p. 379.) For all of the above reasons, we conclude the residence approval condition is constitutionally valid.

II. *Review of Record*

During discovery, Arevalo requested and was granted review of confidential police personnel files. The court provided the witnesses' names, addresses, and contact information regarding one incident. Arevalo requests we independently review the *Pitchess* hearing conducted by the trial court. The Attorney General agrees we may review the sealed transcript.

6

We can independently examine the record made by the trial court "to determine whether the trial court abused its discretion in denying a defendant's motion for disclosure of police personnel records." (*People v. Prince* (2007) 40 Cal.4th 1179, 1285.) We have reviewed the reporter's transcript and conclude the trial court complied with the required *Pitchess* procedures. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225.) The custodian of records was present and placed under oath. The court independently reviewed the relevant personnel file. The proceedings were stenographically recorded. (*Id.* p. 1229.) Our independent review finds the trial court did not abuse its discretion in determining there was discoverable information with respect to only one incident. We conclude the remaining records in the personnel file were not related to false reports or dishonesty and were properly withheld from production.

DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.

7