Filed 2/25/21  P. v. Jackson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D077341 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD284719) |
| LADAWN MARIE JACKSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Polly H. Shamoon, Judge.  Reversed in part and remanded for resentencing.

Shay Dinata-Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers, Kristen Chenelia, Michael D. Butera and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

Ladawn Marie Jackson pled guilty to one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] and admitted that she personally used a dangerous and deadly weapon (§ 1192.7, subd. (c)(23)). The trial court placed Jackson on formal probation for four years.

Jackson challenges two of the conditions of probation ordered by the trial court: (1) the condition that she report her contacts with law enforcement; and (2) the condition requiring that she submit to a search of her computers, recordable media and electronic devices. Further, in supplemental briefing, Jackson contends that under newly enacted Assembly Bill No. 1950 (Stats. 2020, ch. 328, § 2) (amending § 1203.1), she is entitled to have the term of her formal probation reduced from four years to two years.

We conclude that Jackson's first challenge to the probation conditions fails, but the second challenge has merit. In addition, we conclude that Jackson is entitled to a reduction of her term of probation pursuant to Assembly Bill No. 1950. Accordingly, we reverse the sentence and remand for resentencing with directions that the trial court (1) strike the condition of probation requiring that Jackson submit to a search of her electronic devices, and (2) resentence Jackson to a term of probation consistent with Assembly Bill No. 1950.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

According to the probation officer's report, on the morning of December 26, 2019, Jackson summoned an Uber to pick her up at the Residence Inn hotel on Pacific Highway in San Diego, and she requested to be driven to the

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

2

St. Vincent De Paul facility on Imperial Avenue in San Diego.[2] As described by the probation officer, "While on Park Avenue, [Jackson] directed [the Uber driver] to make a left turn. He replied he was unable to because the trolley was passing. She placed a knife to his neck and stated, 'Okay, mother fucker. Go wherever I tell you to go.' The knife was a purple folding-knife, about nine inches in length with about a 4-inch blade. [¶] Around the same time, [the Uber driver] received a notification on his cellphone. When he touched the phone, [Jackson] told him, 'Don't fucking touch the cellphone or I will hit you.' As he continued driving, she touched the blade to his neck about three times and told him he was making a lot of wrong turns. She also forced him to make an illegal U-turn and drive through a red light. [The Uber driver] eventually dropped [Jackson] off at her destination. She was laughing as she exited the vehicle."

During her arrest, Jackson explained that she thought the Uber driver "was trying to take me somewhere so these Asians could hurt me." Jackson told the probation officer, "I thought somebody was chasing me and I was high as hell. . . . The Uber was driving where they wanted to go and I wanted him to take me where I wanted to go. . . . He scared me because he was taking me behind the ballpark, so I pulled out the knife and held it in the mirror."

Jackson was charged with four counts: kidnapping (§ 207, subd. (a)); assault with a deadly weapon (§ 245, subd. (a)(1)); making a criminal threat (§ 422); and false imprisonment by violence, menace, fraud, or deceit (§§ 236, 237, subd. (a)). Each count also included weapons allegations. (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23).)

---

2     As Jackson pled guilty before any testimony was given, we base our statement of facts on the probation officer's report.

On January 22, 2020, Jackson pled guilty to one count of assault with a deadly weapon (§ 245, subd. (a)(1)) and admitted that she personally used a dangerous and deadly weapon (§ 1192.7, subd. (c)(23)). The People dismissed the remaining charges.

The trial court placed Jackson on formal probation for four years. The order granting formal probation set forth numerous conditions with which Jackson was required to comply.

II.

DISCUSSION

A. *Jackson's Challenges to the Conditions of Probation*

We first consider Jackson's challenges to two of the conditions of probation imposed by the trial court.

1. *The Conditions of Probation at Issue*

Jackson challenges two of the conditions of probation imposed by the trial court: conditions 6.k and 6.n. Both conditions are standard conditions that appear on the form used by the San Diego County Superior Court.

Condition 6.k states that Jackson shall "[p]rovide true name, address, and date of birth if contacted by law enforcement. Report contact or arrest in writing to the [probation officer] within 7 days. Include the date of contact/arrest, charges, if any, and the name of the law enforcement agency" (the report-contact condition).

Condition 6.n states that Jackson shall "[s]ubmit person, vehicle, residence, property, personal effects, computers, and recordable media including electronic devices to search at any time with or without a warrant, and with or without reasonable cause, when required by [probation officer] or law enforcement officer." The trial court modified condition 6.n by stating that it was "with the exception of Medical/Financial Records." With respect

4

to condition 6.n, Jackson challenges only the portion relating to her electronic devices, namely, "computers, and recordable media including electronic devices" (the electronics search condition).

2. *Applicable Legal Standards*

When imposing probation, "a sentencing court has 'broad discretion to impose conditions to foster rehabilitation and to protect public safety.' " (*People v. Moran* (2016) 1 Cal.5th 398, 403.) "But such discretion is not unlimited: '[A] condition of probation must serve a purpose specified in the statute,' and conditions regulating noncriminal conduct must be ' "reasonably related to the crime of which the defendant was convicted or to future criminality." ' " (*Ibid.*)

A condition of probation may be challenged on state-law grounds pursuant to the standards set forth in *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*). Under *Lent*, a condition of probation is invalid if it imposes a term or condition that " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Ibid.*) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a . . . term. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*People v. Olguin* (2008) 45 Cal.4th 375, 379-380.) A trial court's application of the *Lent* test is reviewed for abuse of discretion. (*Id.* at p. 379.)

A condition of probation may also be challenged on constitutional grounds, including principles prohibiting vagueness and overbreadth. "A probation condition 'must be sufficiently precise for the probationer to know

5

what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness.  [Citation.]  A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K*).)  When a condition of probation is challenged on constitutional grounds as facially invalid, a pure question of law arises, to which we apply a de novo standard of review.  (*Sheena K.,* at pp. 888-889; *People v. Arevalo* (2018) 19 Cal.App.5th 652, 656.)

Challenges to conditions of probation ordinarily must be raised in the trial court, and if they are not, appellate review of those conditions is forfeited.  (*People v. Welch* (1993) 5 Cal.4th 228, 234-235.)  The one exception to this rule involves facial constitutional challenges.  (*Sheena K.*, *supra*, 40 Cal.4th at pp. 887-889.)  The forfeiture rule does not apply in such a case because a facial constitutional challenge " 'present[s] [a] "pure question[ ] of law that can be resolved without reference to the particular sentencing record developed in the trial court" ' " (*id.* at p. 889) and "does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts—a task that is well suited to the role of an appellate court." (*Id.* at p. 885.)

3. *The Challenge to the Report-Contact Condition Is Not Forfeited, But Lacks Merit*

We first consider Jackson's challenge to the report-contact condition. Jackson argues that the condition is unconstitutionally vague and overbroad because in describing the type of law enforcement contact that Jackson must report, it "does not differentiate between casual contact unrelated to any

6

criminality, or even suspicion of criminality, and contact which might warrant some further investigation by a probation officer."

Jackson contends that the report-contact condition is unconstitutionally vague because it is not " 'sufficiently precise for the [defendant] to know what is required of [her], and for the court to determine whether the condition has been violated.' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) Further, Jackson argues that the condition is unconstitutionally overbroad because "not all non-arrest contacts between police officers and citizens are related to criminal activity," and she could be required to report contacts "based on benign community interaction." In that case, the condition would infringe the rule that "limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*Sheena K.,* at p. 890.)

Jackson's challenge to the report-contact condition does not depend on the specific facts of Jackson's case. Instead, the challenge is based on the language of the condition itself. Accordingly, Jackson makes a facial constitutional challenge that is not forfeited by her failure to raise it in the trial court. (See *In re I.V.* (2017) 11 Cal.App.5th 249, 261 (*I.V.*) [when appellant argued that the word "property" in a search condition was unconstitutionally vague, the challenge was not subject to forfeiture because it could be addressed without examining the record].)

In *People v. Brand* (2021) 59 Cal.App.5th 861, we recently considered and rejected a challenge, based on both vagueness and overbreadth, to a report-contact condition in an order for mandatory supervision. The report-contact condition in *Brand* was identical to the report-contact condition in Jackson's case. Both conditions stated that the defendant shall "[p]rovide

true name, address, and date of birth if contacted by law enforcement. Report contact or arrest in writing to the [probation officer] within 7 days. Include the date of contact/arrest, charges, if any, and the name of the law enforcement agency." (*Id.* at p. 870.) As we explained in *Brand*,

> "Taking the first and second sentences together, a reasonably objective person would conclude that [defendant] is required to report only those contacts in which a law enforcement officer requests identifying information from [defendant]. This meaning arises because the requirement that [defendant] '[r]eport contact or arrest in writing to the [probation officer] within 7 days' directly follows the statement that [defendant] must '[p]rovide true name, address, and date of birth if contacted by law enforcement.' When read together, these two sentences make clear to a reasonable reader that the law enforcement contact that [defendant] must report is any contact in which [defendant] is required to provide his name, address, and date of birth to law enforcement. Further, because the last sentence of the report-contact condition provides that [defendant] must '[i]nclude the date of contact/arrest, charges, if any, and the name of the law enforcement agency,' a reasonable person would understand that [defendant] does not have to report contact with a law enforcement officer that is not meaningful enough for the officer to provide [defendant] with information about the relevant law enforcement agency.

> "In sum, the report-contact condition, when read in its entirety, would indicate to a reasonable person that [defendant] is not required to report casual, random interactions with law enforcement officers. Instead, the type of law enforcement contacts that must be reported are those in which [defendant] is questioned by law enforcement officers and is required to give identifying information, such as when he has been a witness to a crime or is suspected of possible involvement in a crime. Accordingly, we reject [defendant's] contention that the report-contact condition is unconstitutionally vague and overbroad." (*Brand, supra,* 59 Cal.App.5th at pp. 870-871.)

8

We rely on our analysis in *Brand* to conclude that Jackson's challenge to the report-contact condition lacks merit.

4. *The Trial Court Abused Its Discretion in Imposing the Electronics Search Condition*

We next consider Jackson's challenge to the electronics search condition.

a. *The Trial Court's Imposition of the Electronics Search Condition Over Jackson's Objection*

At the sentencing hearing, the trial court stated it would impose the electronics search condition, which provided that Jackson shall "[s]ubmit person, vehicle, residence, property, personal effects, computers, and recordable media including electronic devices to search at any time with or without a warrant, and with or without reasonable cause, when required by [probation officer] or law enforcement officer." However, the trial court expressly modified condition 6.n by stating that it was "with the exception of Medical/Financial Records."

Defense counsel objected to the imposition of the electronics search condition, even with the modification, citing two prongs of the *Lent* test. (*Lent*, *supra*, 15 Cal.3d at p. 486.)[3] On the first prong, counsel argued there was no nexus between Jackson's crime and any electronic device, except that she used a cell phone to arrange the ride with Uber. Defense counsel pointed out, however, that "it wasn't like she called the Uber with the intent to pull this knife out on this man. I wouldn't go so far as to say she used a cell phone

---

[3] As we have explained, *Lent* states that a condition of probation is improper if all of the following factors are present: the condition " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.)

9

to accomplish a crime." On the third prong, counsel argued that the imposition of the electronics search condition would not "help Probation supervise her in any way as there's no information that she's committing any crimes that deal with cell phones or electronic devices."

The trial court overruled the objection, with the following explanation:

"Okay. In this matter, the defendant asked the Uber driver, it looks like almost immediately upon getting into the car, where she wanted to go, and then pulled out the knife. She used her phone to call the Uber driver, and then threatened that if he didn't follow her directions, she threatened him with a knife.

"Separate and apart from the connection with this case, in the third factor of *Lent*, we look at future criminality and the Fourth Waiver extension in a way to deter that. The defendant's criminal record started in 1995 as an adult, and she has had several convictions that deal with theft and drug use. And almost each and every time she's on probation, she violates picking up a new case.

"Given that this case deals with mental health issues that are exacerbated by drug and/or alcohol issues, and that she has previously tried and struggled and failed with drug treatment, I want Probation to have all the tools that it needs to make sure that she is not using, obtaining any drugs, so they can generally make sure she is where she's supposed to be, and that she's had no contact with the victim.

"Frankly, if they don't think she should be using Uber or any sort of ride share because of this case, I want them to have the ability to monitor that, given that she's had this serious offense.

"Given not only the direct nexus to this case but the third factor of *Lent*, weighing public safety against her private interest, I think that the public safety is compromised if that extension does not exist, and I will therefore order it."

10

After the court delivered its ruling, defense counsel pointed out that, despite the trial court's statement that Jackson pulled out the knife "almost immediately" after getting into the car, the record showed that during the drive between the Residence Inn and the St. Vincent De Paul facility, "the knife did not come out the first half of the trip."[4]

        b.    *Application of the Lent Test to the Instant Case*

On appeal, Jackson argues that the trial court abused its discretion in imposing the electronics search condition because all three prongs of the *Lent* test are satisfied.

        i.    *The First Prong*

Jackson contends that the first prong of *Lent* is satisfied because the electronics search condition " 'has no relationship to the crime of which [she] was convicted.' " (*Lent, supra*, 15 Cal.3d at p. 486.) Specifically, Jackson argues that the crime of assault with a deadly weapon did not involve the use of electronic devices. Although recognizing that she was in the Uber when the assault occurred because she used a cell phone application to arrange the ride, Jackson argues that her "use of her cell phone was merely incidental to her crime" and "did not relate to the crime she committed." In support of this argument, Jackson points to the uncontradicted information in the probation officer's report, which shows that "the knife came out halfway through the ride due to an independent trigger," and not "as a part of a pre-planned crime to call and then kidnap or assault the Uber driver." The People make only a cursory attempt to argue otherwise. In a footnote, they observe that although

---

4    On our own motion, we take judicial notice that the distance from the Residence Inn on Pacific Highway to the St. Vincent De Paul facility on Imperial Avenue is over two and a half miles, and the distance to Park Boulevard, where Jackson pulled the knife, from the Residence Inn is at least approximately one and half miles.

the trial court "also noted that Jackson used an electronic device when she scheduled the Uber driver and shortly thereafter attacked him," the point was "admittedly a somewhat weak argument in support of the first *Lent* factor."

We conclude that Jackson's argument on the first prong of the *Lent* test has merit. Although Jackson used a cell phone application to call for an Uber, the assault itself occurred after she had been in the car for a period of time, and appears to have taken place because of a mental health trigger unrelated to Jackson's use of the cell phone to arrange for the Uber ride. Jackson could have committed the same sort of assault had she arranged a ride by walking up to a waiting taxi rather than by using her cell phone. Therefore, the use of the cell phone was merely coincidental to Jackson's offense.

### ii. *The Second Prong*

As for the second prong of the *Lent* test, the issue is whether the electronics search condition " 'relates to conduct which is not in itself criminal.' " (*Lent, supra*, 15 Cal.3d at p. 486.) The parties do not dispute that the second prong of the *Lent* test is satisfied, as the use of electronic devices is not in itself criminal.

### iii. *The Third Prong*

The inquiry under the third prong is whether the probation condition " 'requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent, supra*, 15 Cal.3d at p. 486.)

The leading case on how *Lent*'s third prong applies to electronic search conditions is *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*), in which our Supreme Court concluded that, under the facts of the case before it, the electronics search condition failed the third prong of the *Lent* test. (*Id.* at p.

12

1116.) Specifically, in *Ricardo P.*, the juvenile probationer, who had committed two burglaries (*id.* at p. 1115), was ordered by the juvenile court to " '[s]ubmit . . . electronics including passwords under [his] control to search by Probation Officer or peace office[r] with or without a search warrant at any time of day or night.' " (*Id.* at pp. 1116-1117.) Even though there was no basis for inferring that electronic devices were connected to the juvenile's commission of the burglaries, the juvenile court imposed the electronics search condition to enable probation officers to monitor whether the juvenile was communicating about drugs or with people associated with drugs. (*Id.* at p. 1119.) To support its reasoning, the juvenile court pointed to evidence that the juvenile had previously used marijuana, which the juvenile stated " 'did not allow him to think clearly.' " (*Ibid.*)

Explaining that "*Lent*'s requirement that a probation condition must be ' "reasonably related to future criminality" ' contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition" (*Ricardo P., supra*, 7 Cal.5th at p. 1122), our Supreme Court concluded that "[s]uch proportionality is lacking here" because, among other things, "nothing in the record suggests that [the juvenile] has ever used an electronic device or social media in connection with criminal conduct." (*Ibid.*) Our Supreme Court explained that because an electronics search condition is "burdensome and intrusive," it "requires . . . substantial and particularized justification," which was lacking. (*Ricardo P.*, at p. 1126.)

In the course of explaining its holding, *Ricardo P.* observed that *Lent* would be " 'render[ed] . . . meaningless by broadening the third prong to allow any probation condition that enhances surveillance of the probationer" (*Ricardo P., supra*, 7 Cal.5th at p. 1125), and thus declined to "categorically

13

permit any probation conditions reasonably related to enhancing the effective supervision of a probationer." (*Id.* at p. 1127.) Doing so "would effectively eliminate the reasonableness requirement in *Lent*'s third prong, for almost any condition can be described as 'enhancing the effective supervision of a probationer.'" (*Id.* at p. 1127.) *Ricardo P.* favorably cited a case holding that "'[t]he fact that a search of [the probationer's] cellular phone records might aid a probation officer in ascertaining . . . compliance with other conditions of supervision is, without more, an insufficient rationale to justify the impairment of [the probationer's] constitutionally protected interest in privacy.'" (*Id.* at p. 1126, quoting *People v. Bryant* (2017) 10 Cal.App.5th 396, 404, judg. vacated and cause remanded, sub. opn. *People v. Bryant* (2019) 42 Cal.App.5th 839, review granted Feb. 19, 2020, S259956.)

In summarizing its holding, *Ricardo P.* clarified that it did not intend to "categorically invalidate electronics search conditions" and "[i]n certain cases, the probationer's offense or personal history may provide the juvenile court with a sufficient factual basis from which it can determine that an electronics search condition is a proportional means of deterring the probationer from future criminality." (*Ricardo P., supra*, 7 Cal.5th at pp. 1128-1129.)[5] However, as our Supreme Court explained, "[u]nder the rule we set forth today, a juvenile court imposing such a condition must consider whether, in light of 'the facts and circumstances in each case' . . . , the

---

[5] *Ricardo P.* cited examples of the type of case where an electronics search condition could be a proportional means to deterring future criminality, such as where the "defendant lured [the] victim using ' "either social media or some kind of computer software," ' " the defendant had a " 'history of robbing people of their cell phones,' " or the defendant "had previously used social media sites to promote his gang." (*Ricardo P., supra*, 7 Cal.5th at p. 1129.)

burdens imposed by the condition are proportional to achieving some legitimate end of probation." (*Ricardo P.*, at p. 1127, citation omitted.)

In this case, the probation officer's report indicates that, as an adult, Jackson incurred misdemeanor convictions for petty theft and prostitution, and felony convictions for possessing marijuana for sale and possession of a controlled substance. The probation officer's report also indicates that Jackson suffers from mental illness and substance abuse.

Pointing to Jackson's history of drug use and her drug-related convictions, the People argue that the electronics search condition does not violate the third prong of the *Lent* test because it is "an effective way to monitor whether she was trying to procure drugs." Under the People's reasoning, the electronics search condition is permissible because it allows probation officers to assess whether Jackson is complying with the probation condition under which she must not "knowingly use or possess any controlled substance without a valid prescription," including "[n]o marijuana use at all."

We reject the argument. As in *Ricardo P.*, "nothing in the record suggests that [Jackson] has ever used an electronic device or social media in connection with criminal conduct" (*Ricardo P., supra*, 7 Cal.5th at p. 1122), and in particular, there is no indication in the record that Jackson ever used an electronic device to procure or sell drugs. The trial court stated that it wanted the probation officers "to have all the tools that [they] need[ ] to make sure that she is not using, obtaining any drugs, so they can generally make sure she is where she's supposed to be, and that she's had no contact with the victim." However, *Ricardo P.* establishes that an electronics search condition is not warranted merely to "enhanc[e] the effective supervision of a

probationer" when there is no nexus between a defendant's use of electronic devices and her past or future criminality. (*Ricardo P.*, at p. 1127.)[6]

Although the trial court narrowed the electronics search condition by excluding financial and medical records, the intrusion on Jackson's privacy is still significant, as any item not falling into those two categories remains subject to search. As noted in *Riley v. California* (2014) 573 U.S. 373, a cell phone has an "immense storage capacity" that "collects in one place many distinct types of information . . . that reveal much more in combination than any isolated record," and comprises "a digital record of nearly every aspect of [the defendants'] lives—from the mundane to the intimate." (*Id.* at pp. 393, 395.) For example, solely from photographs stored on an electronic device, "[t]he sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions" (*id.* at p. 394), and "[d]ata on a cell phone can also reveal where a person has been," allowing law enforcement to "reconstruct someone's specific movements down to the minute, not only around town but also within a particular building." (*Id.* at p. 396.) In a case, such as this, where there is no nexus between the use of electronic devices and Jackson's past or future criminality, even an

---

6  Although the People do not advance the argument, the trial court also supported its imposition of the electronics search condition, in part, by stating that "if [the probation officers] don't think she should be using Uber or any sort of ride share because of this case, I want them to have the ability to monitor that." However, because the trial court did not issue any order specifically giving probation officers the authority to prevent Jackson from using rideshare applications, this consideration does not provide a rational relationship between the electronics search condition and a legitimate end of probation. Moreover, allowing probation officers to search all of Jackson's electronic devices is far broader of an intrusion than would be justified by the goal of allowing probation officers to check whether Jackson used rideshare applications on her cell phone.

electronics search condition that excludes financial and medical records is too intrusive to make "the burdens imposed by the condition . . . proportional to achieving some legitimate end of probation." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1127.) The electronics search condition is therefore not reasonable under *Lent*'s third prong.

As all three prongs of the *Lent* test are satisfied, we conclude that the trial court abused its discretion in imposing the electronics search condition. The order granting formal probation must therefore be modified by striking the electronics search condition.

B.    *Jackson Is Entitled to a Reduction of the Term of Her Probation Due to Recent Legislation Generally Limiting Felony Probation to a Period of No More than Two Years*

The final issue is the impact of the Legislature's recent enactment of Assembly Bill No. 1950 on the term of Jackson's probation.

At the time the Jackson was sentenced, section 1203.1, subdivision (a) provided that a court may impose felony probation "for a period of time not exceeding the maximum possible term of the sentence." It further provided that "where the maximum possible term of the sentence is five years or less, then the period of suspension of imposition or execution of sentence may, in the discretion of the court, continue for not over five years." (Former § 1203.1, subd. (a).) Accordingly, the trial court ordered a four-year term of formal probation for Jackson.

During the pendency of this appeal, the Legislature enacted Assembly Bill No. 1950, which amended section 1203.1. (Stats. 2020, ch. 328, § 2.) Subject to exceptions not applicable here, section 1203.1, subdivision (a), as amended, provides that a felony probation term cannot exceed two years. The provision now provides, "The court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the

sentence and may direct that the suspension may continue for a period of time not exceeding two years, and upon those terms and conditions as it shall determine." (§ 1203.1, subd. (a).)

Jackson argues in her supplemental briefing that because her case is not yet final, under the principles of retroactivity applicable to ameliorative changes to the criminal law as set forth in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), she is entitled under Assembly Bill No. 1950 to have her term of probation reduced from four years to two years. In their supplemental briefing, the People agree that the statutory amendment implemented by Assembly Bill No. 1950 is retroactively applicable to cases, like Jackson's, that are not yet final.

Based on this court's recent opinion in *People v. Sims* (2021) 59 Cal.App.5th 943, the parties are correct regarding the retroactivity of Assembly Bill No. 1950. As we stated in *Sims*, "the two-year limitation on felony probation set forth in Assembly Bill No. 1950 is an ameliorative change to the criminal law that is subject to the *Estrada* presumption of retroactivity," and "[t]herefore . . . the two-year limitation applies retroactively to all cases not reduced to final judgment as of the new law's effective date." (*Sims*, at p. 964.)

The parties disagree on whether we should issue an order modifying Jackson's term of probation to two years, or whether we should remand with directions to the trial court to resentence Jackson based on the change in the law. In *Sims*, instead of modifying the term of probation, we remanded for resentencing, stating that "defendant is entitled to seek a reduced probation term on remand under Assembly Bill No. 1950." (*Sims*, *supra*, 59 Cal.App.5th at p. 964.) We will follow the procedure employed in *Sims*, and we will therefore remand to the trial court with directions that Jackson be

resentenced based on the current state of the law, as enacted by Assembly Bill No. 1950.[7]

---

[7] The People argue that a remand is appropriate because (1) the People may want to withdraw from the plea agreement based on the change in law enacted by Assembly Bill No. 1950; or (2) the trial court may want to impose different conditions of probation in light of the shortened probation term. As the possibility that the People will seek to withdraw from the plea agreement is, at this point, only hypothetical, we need not, and do not, express any view as to whether the change in law enacted by Assembly Bill No. 1950 would present a valid ground for the People to do so. With respect to the possibility that the trial court may choose to impose different conditions of probation, that course of action is available regardless of whether the matter is remanded for resentencing. As we stated in *Sims*, "We are confident that to the extent current probationers face difficulties timely completing their probation conditions through no fault of their own, those conditions can be modified as needed to account for the two-year felony probation limitation our Legislature has imposed. (§ 1203.3, subd. (a); see *People v. Killion* (2018) 24 Cal.App.5th 337, 340 ['Generally, a trial court has the authority and discretion to modify a probation term during the probationary period, including the power to terminate probation early.'].)" (*Sims*, *supra*, 59 Cal.App.5th at p. 963.)

## DISPOSITION

We reverse the judgment in part as to Jackson's sentence. The matter is remanded for resentencing, with directions that the trial court (1) strike the words "computers, and recordable media including electronic devices" from condition 6.n in the order granting formal probation; and (2) resentence Jackson consistent with the amendment to Penal Code section 1203.1, subdivision (a) effective on January 1, 2021, which generally limits a term of felony probation to no more than two years. In all other respects the judgment is affirmed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

GUERRERO, J.