Filed 6/30/21

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>MICHAEL CARLOS GONSALVES,<br><br>    Defendant and Appellant. | A159031<br><br>(Alameda County<br>Super. Ct. No. 17-CR-037139) |

A jury convicted defendant Michael Carlos Gonsalves of grand theft (Pen. Code,[1] § 484e, subd. (d)) and fraudulent possession of personal information (§ 530.5, subd. (c)(3)), and the trial court sentenced him to three years of probation. On appeal, defendant challenges the validity of a probation condition forbidding him from associating with any persons known to him to have a "criminal record."

In the published portion of our opinion, we conclude the challenged condition is constitutionally flawed. The condition's use of the term "criminal record" is impermissibly vague because it has no settled meaning and may include a record of an arrest resulting in no charge or conviction. And by broadly encompassing a prohibition on association with persons having mere

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication, with the exception of part B of the Discussion.

[1] Further section references are to the Penal Code unless stated otherwise.

1

arrest histories without charge or conviction, the condition is not carefully tailored to the government's interests in rehabilitating defendant and protecting the public. In the unpublished portion of our opinion, we conclude that defendant's probation term must be reduced in accordance with Assembly Bill No. 1950 (Stats. 2020, ch. 328, § 2 (2019–2020 Reg. Sess.) (Assembly Bill No. 1950).) Accordingly, we reverse and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Briefly, the testimony at trial established the following. In November 2017, a Fremont Police Officer investigating a report of suspicious circumstances at a grocery store encountered defendant and two individuals in the store parking lot. Defendant was in possession of a knife, credit cards in the names of Anna C. and Tracy J.,[2] three cell phones, and a DoubleTree hotel key card. Defendant claimed to have permission to possess Anna C.'s credit cards, and Tracy J. testified her credit cards had been stolen from her car earlier that year. The hotel card contained credit card information for Carl C. who did not know how his information got onto the card. The People's expert on identity theft testified that someone had transferred Carl C.'s information onto the hotel card via the magnetic strip.

The cell phones found in defendant's possession contained personal identifying information for numerous people who did not know defendant or give him permission to use their information. The cell phones had been used to access websites where personal identifying information could be illegally purchased and contained metadata indicating they belonged to defendant.

---

[2] Pursuant to the California Rules of Court, rule 8.90, governing "Privacy in opinions," we refer to the victims by their first name and last initial.

The jury found defendant guilty of misdemeanor grand theft (§ 484e, subd. (d)) and felony fraudulent possession of personal information (§ 530.5, subd. (c)(3)).

At sentencing, the trial court denied defendant's request to reduce the felony conviction to a misdemeanor, noting that his criminal history, although nonviolent, was "quite . . . lengthy" and that "he has not performed well in that connection." In sentencing defendant to three years of felony probation, the court considered the facts that defendant was "[a]rmed, sort of" with a knife at the time of his arrest, that his criminal record was "not encouraging," that his prior record reflected "a pattern of regular and increasingly serious conduct," and that his prior performance on probation was "not encouraging" and had been "medium to poor." (See Cal. Rules of Ct., rule 4.414.)

As one of the conditions of probation, the trial court ordered defendant not to "associate with[] any person known to [him] to have a criminal record."

Defendant appealed.

## DISCUSSION

### A. Challenges to the Probation Condition

We observe at the outset that defendant does not challenge the reasonableness of the association condition under the longstanding framework of *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*).[3] Rather, he

---

[3]     In *Lent*, the California Supreme Court adopted a three-prong test for determining whether a probation condition is unreasonable. "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.) While defendant does not raise a *Lent* challenge, he argues that cases discussing *Lent*'s third prong "still apply" to constitutional overbreadth challenges, as

3

primarily argues the association condition is unconstitutionally vague and overbroad. Although defendant did not make this objection in the proceedings below, a constitutional challenge to a probation condition may be raised for the first time on appeal where, as here, it presents pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888–889 (*Sheena K.*).)

The right of association is constitutional but " 'may be restricted if reasonably necessary to accomplish the essential needs of the state and public order.' [Citations.] Such restrictions are ' "part of the nature of the criminal process." ' " (*People v. Lopez* (1998) 66 Cal.App.4th 615, 627–628 (*Lopez*).) "Trial courts have broad discretion to set conditions of probation in order to 'foster rehabilitation and to protect public safety pursuant to . . . section 1203.1. [Citations.] If it serves these dual purposes, a probation condition may impinge upon a constitutional right otherwise enjoyed by the

---

both "examine the fit between the proscribed conduct and the goal of rehabilitation." Accordingly, defendant draws upon cases analyzing *Lent*'s third prong (i.e., *People v. Brandão* (2012) 210 Cal.App.4th 568 (*Brandão*)) to support his constitutional overbreadth claim.

We note that in *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*), a majority of the Supreme Court articulated a proportionality requirement in the third *Lent* prong over the Chief Justice's dissenting view that the requirement imported "an unduly exacting proportionality inquiry into the *Lent* framework" (*id.* at p. 1130 (conc. & dis. opn. of Cantil-Sakauye, C.J.)) that "needlessly subvert[ed]" the then-existing approach (*ibid.*) consisting of an "additional layer of analysis, above and beyond the *Lent* test," reserved for constitutional overbreadth challenges (*id.* at p. 1133). Here we do not rely upon defendant's cited *Lent* cases in our overbreadth analysis, and accordingly, we need not decide whether they are directly applicable in constitutional overbreadth cases.

probationer, who is 'not entitled to the same degree of constitutional protection as other citizens.' " (*Lopez*, at p. 624.)

Constitutional considerations provide "a second level of scrutiny" beyond the *Lent* framework. (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1356 (*O'Neil*).) Thus, a reviewing court will apply a different standard of review depending on "the condition's effect on a defendant's civil liberties. ' "[A] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." ' [Citation.] All others are reviewed for abuse of discretion[.]" (*Brandão*, *supra*, 210 Cal.App.4th at p. 573.)

### 1. *Constitutional Vagueness*

" ' "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' [Citation.] The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions.' " ' " (*In re D.H.* (2016) 4 Cal.App.5th 722, 727 (*D.H.*).) To withstand a vagueness challenge, a probation condition must be sufficiently precise for probationers to know what is required of them, and for the court to determine whether the condition has been violated. (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) In making this determination, courts are not limited to the condition's text and must consider other sources of applicable law, including judicial construction of similar provisions. (*People v. Hall* (2017) 2 Cal.5th 494, 499–501 (*Hall*).)

Defendant argues the association condition at issue is unconstitutionally vague because the term "criminal record" has no settled

meaning and may include persons who were merely arrested but not charged or convicted of any crime. We agree. As defendant observes, Merriam-Webster Dictionary defines "criminal record" as "a known record of having been arrested in the past for committing a crime." (Merriam-Webster Dict. Online (2021) <https://www.merriam-webster.com/dictionary/criminal%20record> [as of June 30, 2021].) Statutory law, moreover, requires the Department of Justice to maintain "state summary criminal history information," a term that includes "dates of arrests, arresting agencies and booking numbers." (§ 11105, subd. (a)(1)(A).)[4]

The People offer no direct rebuttal to these points and do not dispute that a reasonable construction of the term "criminal record" includes arrest information. Instead, the People posit that the challenged condition avoids unconstitutional vagueness because it is premised on the third party's criminal record being "known" to defendant. We disagree, as the knowledge requirement does nothing to clarify the term "criminal record."

*D.H.*'s reasoning on this point is instructive. There, the probationer challenged a condition prohibiting him from accessing "pornography." Our colleagues in Division One held that the term "pornography" was

---

[4]     Looking to other statutory constructions of "criminal record" and similar terms (*Hall, supra*, 2 Cal.5th at pp. 499–501), we observe that under section 1000.4, where an eligible defendant in a drug abuse case successfully completes a pretrial diversion program, the arrest is deemed to have not occurred, and "[t]he defendant may indicate in response to any question concerning his or her prior *criminal record* that he or she was not *arrested* or granted pretrial diversion for the offense . . . ." (§ 1000.4, subd. (a), italics added.) Additionally, section 13102 defines "criminal offender record information" to include "a summary of arrests," and section 13301, subdivision (a), defines "record" to mean the "master local summary criminal history information as defined in section 13300," which defines the term to include "dates of arrest, arresting agencies and booking numbers." (§ 13300, subd. (a)(1).)

unconstitutionally vague, and that adding an explicit knowledge requirement did not address the term's "*inherent* vagueness." (*D.H.*, *supra,* 4 Cal.App.5th at pp. 728–729.) The court distinguished association conditions amenable to modification by an express knowledge requirement (i.e., non-association with "gang members"), because in those instances, "the vagueness arises not because the category *itself* is unclear, but instead because it is unclear whether particular people, areas, or items fall within the category." (*Id.* at p. 729.) As in *D.H.*, there is an inherent vagueness in the term "criminal record" as it relates to arrest information. The ambiguity is not cured by a requirement that defendant *know* of an associate's "criminal record," as the inherent vagueness of *what* constitutes a criminal record remains.

The People alternatively contend the condition may be modified so that the probation officer can specify whether "criminal record" includes arrest records. We cannot agree. Although a trial court may delegate to the probation officer those details that are necessary to implement the terms of probation, the People's suggested modification would improperly delegate the determination of the "nature of the prohibition" to the probation department. (*O'Neil*, *supra*, 165 Cal.App.4th at pp. 1358–1359.)

### 2. *Constitutional Overbreadth*

A probation condition " 'is unconstitutionally overbroad . . . if it (1) "impinge[s] on constitutional rights," and (2) is not "tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation." [Citations.] The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is

7

impossible, and that practical necessity will justify some infringement.' " (*People v. Arevalo* (2018) 19 Cal.App.5th 652, 656–657 (*Arevalo*).)

In disputing the overbreadth of defendant's association condition, the People rely on *Lopez*, *supra*, 66 Cal.App.4th 615, which addressed a condition that prohibited the probationer's association with gang members. (*Id.* at p. 622.) While agreeing that the word "gang" had both benign and sinister connotations and was therefore vague in the abstract (*id.* at p. 631), the *Lopez* court ultimately determined that, viewed in context, "it is apparent the word was intended to apply only to associations which have for their purpose the commission of crimes" (*id.* at p. 632). Here, in contrast, the People identify no factors that, in context, suggest defendant's association condition was not intended to apply to persons with mere arrest histories and no records of charges or convictions. Thus, *Lopez* does not support the People's position.

The People's citation to *People v. Robinson* (1988) 199 Cal.App.3d 816 is similarly unavailing. While *Robinson* involved a comparable condition that prohibited the probationer's association with "persons of known criminal record," the court mainly determined the condition was a reasonable preventative measure to avoid future criminality under the three-pronged *Lent* test. (*Robinson*, at pp. 817–818.) Although *Robinson* "perceive[d] no constitutional infirmity" in the probation condition (*id.* at p. 818), the court did not consider the precise issue here, i.e., whether the term "criminal record" was unconstitutionally vague or overbroad because it included mere arrest records. The same is true for *Birzon v. King* (2d Cir. 1972) 469 F.2d 1241, one of two cases cited by *Robinson*, which summarily concluded that "criminal record" referred to "conviction for crime" in denying habeas corpus

8

relief to a parolee convicted of violating parole by associating with several persons having criminal conviction records.  (*Birzon*, at pp. 1242–1243.)

The other case cited by *Robinson*, *United States v. Furukawa* (9th Cir. 1979) 596 F.2d 921 (*Furukawa*), likewise involved no constitutional vagueness or overbreadth challenge.  There, the court interpreted a condition that required the probationer to associate only with "law-abiding persons" to validly prohibit association with persons currently violating the law.  (*Id.* at p. 922.)  In distinguishing such a condition from one banning association with persons having a criminal record, the court reasoned:  " 'A person disobeying the law today and hence not being law-abiding may as yet have no criminal record, and a person with a past record may be entirely law-abiding today.' " (*Ibid.*)  *Furukawa* lends no meaningful support to the People's position, and in fact suggests that temporal and other considerations are appropriate for narrowly tailoring an association restriction.  (See *United States v. Napulou* (9th Cir. 2010) 593 F.3d 1041, 1045 (*Napulou*) [citing *Furukawa* in holding that a probation condition prohibiting association with persons convicted of misdemeanors was temporally overbroad].)

The People argue the association condition's knowledge requirement mitigates any overbreadth concerns.  We disagree.  Whether or not defendant knows the arrest history of any given individual is beside the point.  The controlling question is whether the prohibition is carefully tailored to advance the government's interests in reformation and rehabilitation. (*Arevalo*, *supra*, 19 Cal.App.5th at pp. 656–657.)  The People, we note, emphasize the government's interests are reasonably advanced by prohibiting defendant's association with "individuals he knows to have criminal *convictions*."  (Italics added.)  We have no argument with that proposition as a general matter, but the People offer no argument or

9

rationale showing the government's interests are also promoted by a blanket ban on defendant's association with persons who have been arrested but not charged or convicted. We conclude the challenged condition is not carefully tailored to advance the government's interests in reformation and rehabilitation.

Our decision is informed by the Legislature's efforts over the years to mitigate the prejudicial use and effect of arrest records. For instance, when a person is arrested and released without charge, "any record of arrest of the person shall include a record of release" and "the arrest shall not be deemed an arrest, but a detention only." (§ 849.5.) Additionally, an arrest record may be ordered sealed on the petition of a minor arrested for a misdemeanor and released without formal charge, after dismissal of the proceedings or after acquittal. (§ 851.7.) Arrest records may also be sealed on motion of a person charged and acquitted of any offense where it appears to the judge that the person was "factually innocent" (§§ 851.85–851.86) and on motion of eligible drug offenders who successfully complete a pretrial diversion program (§ 851.90). In a similar vein, state and local agencies are prohibited from asking or requiring an applicant for a license, certificate, or registration to reveal any record of arrest not resulting in conviction or a plea of nolo contendere. (Bus. & Prof. Code, § 461.) Moreover, both public and private employers are barred from asking job applicants to disclose information concerning an arrest or detention that did not result in conviction, and from seeking or using arrest records in determining the conditions of employment. (Lab. Code, § 432.7, subd. (a)(1).)

Courts, too, have historically guarded against the prejudice that stems from evidence of mere arrests. "[I]t has long been held that evidence of an accused's prior arrests is inadmissible" (*People v. Anderson* (1978) 20 Cal.3d

10

647, 650) because such evidence is more prejudicial than probative (*People v. Williams* (2009) 170 Cal.App.4th 587, 609–610; *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1523). "The mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct. An arrest shows nothing more than that someone probably suspected the person apprehended of an offense. When formal charges are not filed against the arrested person and he is released without trial, whatever probative force the arrest may have had is normally dissipated." (*Schware v. Board of Bar Exam. of State of N. M.* (1957) 353 U.S. 232, 241.)

In short, a mere record of arrest generally is not probative on the law-abiding character of the arrestee. It follows that a probationer's knowing association with such a person does little, if anything, to advance the government's interests in rehabilitating the probationer and protecting the public. Rather than being narrowly tailored to interfere minimally with defendant's constitutional freedom of association, the condition here unnecessarily impairs it.

Applying settled principles for review of probation conditions that impinge on constitutional rights, we conclude defendant's constitutional challenge has sufficient merit to warrant reversal.[5]

### 3. Other Challenges

Defendant contends that in order to pass constitutional muster, the association condition must be limited to the two individuals present at the

_____

[5] Our decision should not be read as casting doubt on conditions that prohibit a probationer from associating with a more narrowly defined class of persons (e.g., known gang members or drug offenders) simply because their criminal histories consist only of arrests with no charges or convictions. We decide only that the blanket prohibition on defendant's association with all persons having a known criminal record is impermissibly overbroad.

11

time of his arrest, or to persons recently engaged in the crime of identity theft, and it cannot include persons with only past records of criminal convictions.

As the People point out, "the nature of [defendant's] convictions is not so easily shoehorned into such a specific criminal class." Not only did the evidence at trial raise questions about how defendant came into possession of Tracy J.'s stolen cell phones and the hotel card containing Carl C.'s credit card information, but the record contains salient facts about defendant's criminal history. As recounted above, at sentencing the trial court highlighted defendant's "pattern of regular and increasingly serious conduct" and his poor performance while on probation. Defendant's prior convictions included unlawful use of controlled substances (Health & Saf. Code, § 11550, subd. (e)), carrying a concealed firearm (§ 12025, subd. (a)(1)), and unlawful possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1). In the instant case, defendant was arrested in possession of a knife and pepper spray on his person, and he admitted to daily methamphetamine use.

On this record, the trial court was not constitutionally constrained to prohibit defendant's association with just the two individuals present at the time of his arrest or persons known to be engaged only in the crime of identity theft. On remand, however, the trial court may consider any association condition consistent with the views expressed in this opinion, taking into account all factors bearing on the reasonableness and proportionality of the condition (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1122; *Lent*, *supra*, 15 Cal.3d 481), including temporal and other considerations (*Napulou*, *supra*, 593 F.3d at p. 1045).

12

Defendant's remaining arguments are forfeited. He contends the association condition (1) wrongfully prohibits him from forging beneficial relationships with individuals in substance abuse and reentry treatment programs; and (2) has a disproportionate impact on Latino and Black probationers who are more likely to have family members, friends, and community members with records of conviction.

Unlike defendant's vagueness and overbreadth challenges, these contentions do not raise pure questions of law, and accordingly, traditional objection and waiver principles apply. (*Sheena K.*, *supra*, 40 Cal.4th at p. 889.) For both contentions, defendant relies on factual assertions that are extrinsic to the record and were not presented below. (*People v. Relkin* (2016) 6 Cal.App.5th 1188, 1194 [failure to timely object to probation condition forfeits claim of error on appeal].) Additionally, he makes no contention that he would have sought substance abuse or reentry treatment but for the association condition at issue, or that he has relatives or close friends with records of criminal convictions. Accordingly, we decline to consider these new legal theories for the first time on appeal. (*Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780.)

**B. Assembly Bill No. 1950**

In supplemental briefing, defendant argues, and the People concede, that the three-year probation term must be reduced pursuant to Assembly Bill No. 1950.

At the time of defendant's sentencing in November 2019, former section 1203.1 "authorized felony probation 'for a period of time not exceeding the maximum possible term of the sentence' but where the 'maximum possible term of the sentence is five years or less, then the period of suspension of imposition or execution of sentence may, in the discretion of the court,

13

continue for not over five years.' " (*People v. Quinn* (2021) 59 Cal.App.5th 874, 879 (*Quinn*).)  Assembly Bill No. 1950, effective January 1, 2021, amended section 1203.1, subdivision (a), to now provide:  "The court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time not exceeding two years, and upon those terms and conditions as it shall determine."

By default, criminal statutes are presumed to apply prospectively. (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307.)  But where an amendatory statute lessens the punishment for criminal conduct and there is no savings clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed.  (*People v. Frahs* (2020) 9 Cal.5th 618, 627–628.)  We agree with the reasoning and conclusions of the courts holding that Assembly Bill No. 1950's felony probation limitation is an ameliorative change in the law that applies retroactively.  (*People v. Stewart* (2021) 62 Cal.App.5th 1065, 1073–1074; *People v. Sims* (2021) 59 Cal.App.5th 943, 963–964; *Quinn, supra*, 59 Cal.App.5th at pp. 882–883; *People v. Burton* (2020) 58 Cal.App.5th Supp. 1, 15–16.)  Accordingly, defendant is entitled on remand to seek a reduced probation term under Assembly Bill No. 1950.

## DISPOSITION

The judgment is reversed in part, and the matter is remanded for resentencing consistent with this opinion.  In all other respects, the judgment is affirmed.

14

_____

Fujisaki, Acting P. J.

WE CONCUR:


_____

Petrou, J.


_____

Wiseman, J.*


A159031

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15

**People v. Gonsalves (A159031)**

Trial Court:  Alameda County

Trial Judge:  Hon. Thomas Stevens

Attorneys:

Spero Law Office and Leah Spero for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Rene A. Chacon, Supervising Deputy Attorney General, Masha A. Dabiza, Deputy Attorney General, Jalem Z. Peguero, Deputy Attorney General for Plaintiff and Respondent.