Filed 10/11/22 P. v. Cadenas CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H049100 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 20CR005329) |
| v. | |
| CARLOS MANUEL CADENAS, | |
| Defendant and Appellant. | |

Defendant Carlos Manuel Cadenas, a combat veteran of the United States Army, pleaded no contest to felony driving under the influence of alcohol (DUI) with three prior DUI convictions within 10 years.  The trial court suspended imposition of sentence and placed Cadenas on formal probation for a period of five years.

On appeal, Cadenas contends the trial court erred under Penal Code section 1170.9 when it denied his request for treatment in the superior court's "veteran's court."[1]  In addition, Cadenas challenges three probation conditions on constitutional grounds, contends that recent changes in the law require that certain court-imposed fees be

---

[1] The record includes various designations for the Monterey County Superior Court's treatment program for veterans.  We refer to it as the "superior court's veteran's court" or "veteran's court."

vacated, and requests that the sentencing minute order be modified to reflect the imposed fines, fees, and assessments.

For the reasons described below, we reject Cadenas's contention that the trial court erred under Penal Code section 1170.9. Additionally, we modify a probation condition that governs controlled substances, vacate four court-imposed fees, and direct the trial court to amend its sentencing minute order.

## I. FACTS AND PROCEDURAL BACKGROUND[2]

On June 19, 2020,[3] a California Highway Patrol (CHP) officer responded to a report of reckless and possible drunk driving on State Road 68. Witnesses saw Cadenas speeding, racing another car, cutting off other cars, slamming on his brakes, weaving, crossing into oncoming traffic, and "almost hit[ting] a bicyclist." The CHP officer who stopped Cadenas smelled a strong odor of alcohol coming from him. Cadenas had slow, slurred speech and red watery eyes. He admitted consuming alcohol earlier that day. Cadenas failed field sobriety tests, and two preliminary alcohol screening tests showed his blood-alcohol content (BAC) was approximately 0.20 percent.

On August 12, the Monterey County District Attorney filed an information charging Cadenas with felony DUI while having three prior DUI convictions (Veh. Code, §§ 23152, 23550; count 1), and felony driving with a BAC of 0.08 percent or more while having three prior DUI convictions (Veh. Code, §§ 23152, subd. (b), 23550, 23550.5; count 2). The three prior DUI convictions alleged in counts 1 and 2 occurred on August 23, 2011 (Monterey County), September 21, 2011 (Fresno County), and May 4, 2016 (Monterey County). The information further alleged two enhancements for each count: DUI while having been convicted of three DUI offenses within 10 years (Veh. Code,

---

[2] Because Cadenas entered a no contest plea, the facts recounted here are drawn from the probation officer's report prepared for his sentencing.

[3] Unless otherwise indicated, all dates occurred in 2020.

2

§ 23550, subd. (a); enhancement 1) and having suffered a prior felony DUI conviction on May 4, 2016 (Veh. Code, § 23550.5, subd. (a); enhancement 2).

On September 11, pursuant to a written plea agreement, Cadenas pleaded no contest to felony driving with a BAC of 0.08 percent or more with prior convictions (count 2) and admitted having suffered three prior DUI convictions within the past 10 years (enhancement 1, attached to count 2). The plea agreement indicated that Cadenas would "receive felony probation with up to one year in jail as a condition of probation" and that "[t]he court may refer Mr. Cadenas to Veteran[']s Treatment Court if the Court chooses to do so." Similarly, at the plea hearing, Cadenas's defense counsel stated that the prosecutor opposed a referral to the superior court's veteran's court and the referral issue would be litigated subsequent to Cadenas's plea. The prosecutor agreed that Cadenas could later argue for the referral, and the trial court noted that Cadenas would "get felony probation at the beginning or possibly Veteran[']s Treatment Court with probation." Following entry of Cadenas's plea, the court suggested that defense counsel file written arguments regarding the referral to veteran's court in anticipation of Cadenas's impending sentencing hearing. The court continued the matter to October 21 for sentencing.

On September 25, Cadenas filed a "brief in support of referral to veteran[']s treatment court" (VTC) (capitalization and boldface omitted). Cadenas noted that he had previously completed the superior court's veteran's court program in February 2018 (related to his May 2016 DUI conviction) and that his felony conviction was subsequently reduced to a misdemeanor. Cadenas asserted that Penal Code section 1170.9[4] required the trial court to determine whether he is a veteran who might be suffering service-related post-traumatic stress disorder (PTSD) or substance abuse. Cadenas further argued that if he were such a person, the court was required to consider

---

[4] Unspecified statutory references are to the Penal Code.

3

that fact in deciding whether to order probation "under the supervision of the Monterey County Probation Department or if he should be sent to Veteran's Treatment Court." Cadenas also asserted that section 1170.9, subdivision (f) required "that preference be given to programs which have successfully treated veterans." Cadenas ultimately "requested that [he] be referred to Veteran['] s Treatment Court for eligibility."

Cadenas attached to his brief three letters written by social worker Rebecca Smith, a Veteran Justice Outreach Specialist with the VA Palo Alto Healthcare System. The letters documented that Cadenas is "a Veteran of the United States Army having served Honorably from 08/16/2008 to 08/27/2009," had received services through the VA Palo Alto Healthcare System since November 2009, is "100% Service-Connected for PTSD related to his service during Operation Iraqi Freedom," and "has been diagnosed by the Veterans Health Administration with Post Traumatic Stress Disorder and Alcohol Abuse Disorder." The letters also detailed the treatment Cadenas had been receiving through the VA since mid-July 2020 (i.e., after his arrest for the current offense).[5] Smith opined that Cadenas "could benefit greatly from the support and specialized supervision that is provided by the [superior court's] Veteran['] s Treatment Court Collaborative," which would assign him a "Veteran Mentor" and "would allow [his] assured attendance in a weekly group . . . called Moral Reconation Therapy [(MRT),] . . . [which] is an evidence-based treatment targeting judicial relapse." Smith further explained that "admission into the Veteran['] s Treatment Court would not be a requirement for [Cadenas's] participation" in MRT.

In a probation officer's report dated October 6, the assigned probation officer wrote the following about Cadenas and the superior court's veteran's court: "The defendant is eligible to be placed on formal probation and it is believed that with the

---

[5] The treatment that Cadenas received in 2020 through the VA was not part of the superior court's veteran's court. Cadenas sought this treatment after his arrest, based on his eligibility for VA benefits.

4

combination of the Veteran[']s Treatment Court, which includes the court, Veteran's Justice Outreach, Peer mentor, Behavioral Health and Probation, the defendant can complete a term of probation. As evidence, the defendant was placed at the Veteran[']s Transition Center on September 8, 2016 and graduated on February 7, 2018. Therefore it is respectfully recommended that the defendant be placed on 3 years of formal probation and that alternative custody programs be allowed."

On October 21, the trial court convened for sentencing but did not sentence Cadenas. Instead, the court continued the case for a hearing on Cadenas's eligibility for the superior court's veteran's court. The court scheduled that hearing in a different department (Department 10) of the Monterey County Superior Court.[6]

On December 1, Cadenas filed a "supplemental brief in support of admission to veteran['']s treatment court" (capitalization and boldface omitted). Cadenas stated that he enlisted in the Army in 2006 and served until 2012. He was a combat infantryman and "deployed for a 14-month tour in Mosul, Iraq," during which time he "experienced a number of traumatic events, including being shot at, being bombed, engaging in fire fights, and witnessing multiple violent and graph[ic] deaths, including those of close friends." Cadenas also said he "suffers from PTSD as a result of witnessing these numerous traumatic events" and "is 100% disabled." Cadenas reiterated the various services he had been receiving from the VA and noted that he was employed, had a B.S. and B.A. degree (2007) and two M.A. degrees (2011 and 2013), had completed a 28-day residential treatment program and "all aftercare" during his previous participation in veteran's court, and had "remained sober for almost four years." Cadenas described various positive achievements attained during his period of sobriety, including in the areas of employment, housing, finances, and family relations. He asserted that he had

---

[6] Although not explicitly stated in the record, Department 10 appears to be the department that administers the veteran's court program in Monterey County Superior Court.

5

become anxious and depressed "in the wake of the global [COVID-19] pandemic and shelter-in-place orders."

Additionally, Cadenas explained in his supplemental brief that the question pending for the court was whether he "will be supervised through Veteran's Treatment Court rather than Felony Probation." Cadenas added that Monterey County's veteran's court "is a successful program designed to treat Veteran[]s and provide them with personalized assistance" and, as such, must be given preference by the court under section 1170.9, subdivision (f). Cadenas argued further that he met all the eligibility requirements for veteran's court and there was no basis for excluding him from veteran's court.

On February 3, 2021, the court held a contested hearing in Department 10 on Cadenas's eligibility for the superior court's veteran's court according to the court's internal guidelines.[7] The proceeding occurred before a different bench officer than the one who had accepted Cadenas's plea. Persons present at the hearing included Rebecca Smith, "Veterans' Affairs Analyst Jack Murphy," a probation officer, and a representative from the Department of Behavioral Health.

---

[7] This court granted Cadenas's motion to augment the appellate record with a document titled "Monterey County Superior Court Veteran[']s Treatment Court Information Sheet" (hereafter, information sheet). Regarding the "program requirements," the information sheet states, inter alia, that the "[v]eteran defendant must enter a plea in the alpha court" and "[t]here is no 'right' to be admitted or readmitted into Veteran's Treatment Court." Further, one of the "disqualifying criteria" (capitalization and boldface omitted) listed on the information sheet is "[d]anger or substantial risk to others." There is, however, a caveat attached to that criteria: "Extraordinary circumstances may be considered on an individual basis subject to review and recommendation of the Veteran[']s Court Team. [¶] Presumptively ineligible cases may be considered by the Veteran[']s Court Judge on an individual basis if extraordinary circumstances exist on a case by case basis." (Italics omitted.) The information sheet does not include the term "public safety."

6

At the beginning of the hearing, the judge noted that she "did have an opportunity for review" and specifically mentioned having reviewed the probation officer's report."[8] Cadenas's defense counsel stated her belief "that the only point of contention to admitting Mr. Cadenas back into vet[eran's] treatment court is the valid concerns for public safety due to the [fact] that this is a fifth DUI."[9] Counsel further said that she had "noticed in the criteria listed for the veteran[']s treatment court [that] it does state that the Court can overcome the presumption to exclude individuals based on public safety concerns, and the Court can overcome that presumption if the Court finds extraordinary circumstances." Additionally, counsel reiterated the deleterious effect that the pandemic had had on Cadenas and mentioned that "four of his fellow servicemen commit[ted] suicide in nine months."

The prosecutor confirmed that her "biggest concern" with admitting Cadenas to the superior court's veteran's court treatment program was public safety, noting that Cadenas had a "very high" BAC and the current DUI offense involved "very disturbing" conduct. The prosecutor also stated her belief "that the criteria does not allow for any offenses that are a danger or a substantial risk to others" and asserted that Cadenas's current offense did not "fit[] within our criteria." In rebuttal, defense counsel said, "[W]hile the criteria does start by saying ineligible due to a public safety danger concerns, it also does specifically state that the Court can find extraordinary circumstances and determine that person is still eligible. And I do think the extraordinary circumstances are here."

---

[8] We note additionally that the clerk's minute order for this eligibility hearing states that "[t]he Court has reviewed the assessment report." However, the judge did not state during the hearing that she had reviewed something called an "assessment report," and there is no document titled "assessment report" in the appellate record.

[9] The probation report indicates that, in addition to the current DUI offense and the three prior DUIs alleged in the information, Cadenas committed another DUI offense in January 2007 (Fresno County).

Cadenas personally addressed the court at the eligibility hearing and stated that he needed help, was ashamed of his conduct, and "wanted to take [his] life away" on the night of the current offense, but he now "realize[s] that it's not worth taking [his] life." He also acknowledged the "great team [] that's helping [him] out" and said he was "willing to do anything" to get the help he knows he needs.

The judge assured Cadenas that he was "going to get the help" he needed. The judge explained that she was "trying very hard to follow [the veteran's court's internal] criteria to exercise [its] discretion when it's appropriate to look at cases where there are extraordinary circumstances and keeping in mind [its] obligations for accountability and the [existing] program . . . and also maintaining support and considering public safety." The judge said she was very concerned that the current offense was Cadenas's fifth DUI and, regardless, he had a very high BAC and had committed acts that were "scary." The judge opined that the current offense involved "a substantial risk to the safety of others" and said, "I do not believe under the criteria that has been set at this time, it would be appropriate for the Court to welcome you back to the veteran[']s treatment court."[10]

After declining to admit Cadenas to the superior court's veteran's court, the judge commented: "And I am very glad to hear that you have your full medical benefits, your full VA benefits. You have earned those. And you will be able to get the treatment that you need. It won't be through this [veteran's court] program with these additional requirements. But the team is here absolutely 100 percent for you. And [Jack] Murphy is going to continue to be 100 percent available to you." The judge then sent the case back to the department in which Cadenas had pleaded no contest (Department 2) for a sentencing hearing.

---

[10] The clerk's minute order for the eligibility hearing described the court's ruling denying Cadenas admission to veteran's court as follows: "Defendant is ineligible for Veterans Treatment Court pursuant to [Penal Code section] 1170.9."

8

On March 9, 2021, in anticipation of sentencing, Cadenas filed letters from Rebecca Smith and Jack Murphy. The letters discussed Cadenas's continuing treatment through the VA Palo Alto Healthcare System and requested that "he be afforded an opportunity to benefit from an alternative sentencing program in[] lieu of custody so that this deserving Veteran may continue with his mental health treatment programs."

The trial court held a sentencing hearing on March 10, 2021.[11] Cadenas's defense counsel requested that the court allow Cadenas to serve any jail time "on the home confinement program," because he was "currently receiving a number of treatment services through the VA" and on the waiting list for a VA inpatient program.

The trial court suspended imposition of sentence for five years and placed Cadenas on formal probation with multiple terms and conditions.[12] Although the trial court did not orally pronounce all of the terms and conditions of probation listed in the probation report, Cadenas stated that he had reviewed them with his counsel and understood and accepted them. The conditions included 180 days in county jail (with a surrender date of May 6, 2021). The court said that it had no objection to home confinement in lieu of jail time and that Cadenas's participation in residential treatment could suffice for home confinement. Other probation conditions "authorize[d] [Cadenas]'s release to the Probation Officer . . . for placement into a residential treatment program," ordered Cadenas to "[e]nroll in and complete a county approved . . . 18-Month Multiple Offender Alcohol Program," and further ordered him to "[p]articipate in any counseling or substance abuse program the probation officer deems necessary, including approved residential treatment" (condition No. 15). Additionally, the court ordered Cadenas to

___

[11] The bench officer who pronounced judgment was different than the one who had accepted Cadenas's no contest plea and the one who had denied Cadenas admission to veteran's court.

[12] We note that the sentencing minute order states that, upon a motion by the district attorney, the trial court dismissed count 1 in the furtherance of justice (§ 1385) and struck the three remaining enhancements alleged in the information. These actions are not reflected in the reporter's transcript of the sentencing hearing.

abstain from using alcohol, marijuana, or other controlled substances and not "traffic in, or associate with persons known to you to use or traffic in controlled substances" (condition No. 9), and further ordered him to not "purchase or possess alcoholic beverages" and to "stay out of places where alcohol is the main item of sale" (condition No. 19).

The trial court ordered Cadenas to pay various fines, fees, and assessments, including a criminal justice administration fee (for which the court did not specify the amount) (former Gov. Code, §§ 29550.1 and 29550.2), a probation services fee of $864 and $81 per month (former § 1203.1b), a $55 payment administration fee (§ 1205, subd. (e)), and a $25 administration screening fee (former § 1463.07).

On March 24, 2021, Cadenas's defense counsel—after being contacted by Cadenas's probation officer—requested that the matter be placed on the trial court's calendar for "[c]larification of [s]entence." At a hearing on April 2, 2021, the trial court, the parties, and the probation officer discussed a conflict that had arisen between the previously imposed May 6, 2021 surrender date and Cadenas's impending entry into residential treatment. The trial court stated that, according to the Department of Veteran's Affairs, Cadenas had been participating in an outpatient program and was scheduled to begin a long-term VA residential treatment program ("Men's Residential Trauma Recovery Program") on April 7, 2021. The probation officer recommended that the court modify Cadenas's surrender date and stated that 90 days of residential treatment "would suffice" for Cadenas's 180-days jail term. The court then modified Cadenas's probation by vacating the surrender date and continued the matter until August 4, 2021, to accommodate for Cadenas's time in residential treatment. The court expressed uncertainty about whether Cadenas should receive 180 days of custody credit for his participation in a 90-day program and said that, on August 4, 2021, it would address whether Cadenas would "need to do any custody time, whether it is on home confinement, or whether the time has just been served." The court added: "Obviously,

10

everybody wants you to get through that program. It's an intensive program, and so that's what your main focus should be. Hopefully, this adds some additional incentive for you to really apply yourself; okay?" Cadenas responded, "Yes, ma'am. Thank you."

On May 10, 2021, Cadenas timely appealed the trial court's March 10, 2021 sentencing order.

## II. DISCUSSION

Cadenas raises six claims of error. He contends: (1) the trial court erred when it denied his request for a referral to veteran's court; (2) no evidence supported the trial court's finding that denying him admission to veteran's court would be more protective of public safety than accepting him in that court program; (3) probation condition No. 9 is unconstitutionally vague and overbroad; (4) probation condition No. 15 involves an improper delegation of judicial authority and is unconstitutionally vague; (5) probation condition No. 19 is unconstitutionally vague; and (6) four fees imposed at sentencing must be stricken or vacated and the clerk's sentencing minute order should be modified to reflect the imposed fines, fees, and assessments.

A. *Veteran's Court*

Cadenas asserts that the trial court violated section 1170.9 by improperly relying on public safety concerns to deny his request for admission to the superior court's veteran's court. He argues that "there is no public safety exception to a trial court's mandatory duty to give preference to a treatment program with a record of serving veterans." To remedy this alleged error, Cadenas states that we should reverse and remand "with directions to reconsider the VTC request in light of the court's mandatory duty to give preference to veteran-focused programs as set forth in section 1170.9, subdivision (f)–with no public safety exception."

Alternatively, Cadenas contends that the trial court abused its discretion by denying him admission to veteran's court "because the record contains no evidence at all to support the view that referring [him] to such a program would be more dangerous than

11

referring him to some other program." For this alleged error, Cadenas requests a remand "to the trial court with directions to reconsider [his] request for referral to VTC in light of the fact that there is no evidence that granting such a referral would pose a greater danger to public safety than denying it."

1. Legal Principles

Because Cadenas's contentions rest on the specifics of section 1170.9, we describe its relevant provisions in detail.

Section 1170.9 establishes alternative sentencing provisions for military veterans convicted "of a criminal offense who could otherwise be sentenced to county jail or state prison" and "may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's service." (§ 1170.9, subd. (a).) Upon a defendant's allegation that he or she qualifies under section 1170.9, the court must make the qualification determination "prior to sentencing." (*Ibid.*)

"If the court concludes that a defendant convicted of a criminal offense is a person described in subdivision (a), and if the defendant is otherwise eligible for probation, the court shall consider the circumstances described in subdivision (a) as a factor in favor of granting probation." (§ 1170.9, subd. (b)(1).)

"If the court places the defendant on probation, the court may order the defendant into a local, state, federal, or private nonprofit treatment program for a period not to exceed that period which the defendant would have served in state prison or county jail, provided the defendant agrees to participate in the program and the court determines that an appropriate treatment program exists." (§ 1170.9, subd. (b)(2).)

Section 1170.9, subdivision (c) states in part: "If a referral is made to the county mental health authority, the county shall be obligated to provide mental health treatment services only to the extent that resources are available for that purpose . . . . If mental

12

health treatment services are ordered by the court, the county mental health agency shall coordinate appropriate referral of the defendant to the county veterans service officer."

"When determining the 'needs of the defendant,' for purposes of [s]ection 1202.7, the court shall consider the fact that the defendant is a person described in subdivision (a) in assessing whether the defendant should be placed on probation and ordered into a federal or community-based treatment service program with a demonstrated history of specializing in the treatment of mental health problems, including substance abuse, post-traumatic stress disorder, traumatic brain injury, military sexual trauma, and other related mental health problems."[13] (§ 1170.9, subd. (d).)

A defendant who is granted probation under section 1170.9 and committed to a residential treatment program "shall earn sentence credits for the actual time the defendant serves in residential treatment." (§ 1170.9, subd. (e).)

Subdivision (f) of section 1170.9 states: "The court, *in making an order under this section to commit a defendant to an established treatment program, shall give preference to a treatment program that has a history of successfully treating veterans* who suffer from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of that service, *including, but not limited to, programs operated by the United States Department of Defense or the United States Department of Veterans Affairs*." (Italics added.)

Lastly, section 1170.9, subdivision (g) provides that "[t]he court and the assigned treatment program may collaborate with the Department of Veterans Affairs and the

---

[13] Section 1202.7 provides in relevant part: "The Legislature finds and declares that the provision of probation services is an essential element in the administration of criminal justice. The safety of the public, which shall be a primary goal through the enforcement of court-ordered conditions of probation; the nature of the offense; the interests of justice, including punishment, reintegration of the offender into the community, and enforcement of conditions of probation; the loss to the victim; and the needs of the defendant shall be the primary considerations in the granting of probation."

13

United States Department of Veterans Affairs to maximize benefits and services provided to the veteran."[14]

We consider questions of statutory interpretation de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) " ' " ' 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." ' " ' " (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.)

Furthermore, "[w]e review a trial court's sentencing decisions for an abuse of discretion, evaluating whether the court exercised its discretion 'in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an "individualized consideration of the offense, the offender, and the public interest." ' [Citation.] An abuse of discretion is found where the court 'relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.' " (*People v. Panozo* (2021) 59 Cal.App.5th 825, 837.)

2. Analysis

There is no dispute that Cadenas meets the qualifications set forth in section 1170.9 and that the trial court granted him probation and ordered him to participate in a counseling or substance abuse treatment program, "including approved residential treatment." Cadenas, however, asserts that the court "made no order granting preference

---

[14] Section 1170.9 also includes another subdivision that authorizes a court "to restore a defendant who acquired a criminal record due to a mental health disorder stemming from service in the United States military to the community of law abiding citizens." (§ 1170.9, subd. (h)(1).)

14

to a proven veteran['] s[ ] program." He argues that section 1170.9, subdivision (f) imposes a mandatory duty on the court to "give preference to a proven veteran['] s program when it orders a veteran probationer into treatment under that section." He further asserts that "[p]ublic safety does not appear in the statute as a limiting consideration for the decision on whether to use a proven veteran['] s[ ] program or not." As such, "the court did not have discretion to refuse or omit to give preference to a proven veteran['] s[] program on nonstatutory grounds such as public safety."[15]

We are not persuaded that the trial court erred under section 1170.9 when it ordered probation under the stated terms and conditions. Contrary to Cadenas's assertion, the trial court gave preference to a successful veteran's treatment program when, on April 2, 2021 (in conjunction with the probation department), it accommodated and approved of Cadenas's participation in the VA's "Men's Residential Trauma Recovery Program." That program had been mentioned by social worker Smith in her presentencing letter, and was later described to the court by a VA psychologist (in anticipation of the April 2, 2021 hearing) as including "individual and group therapy targeting PTSD and co-occurring conditions such as substance abuse disorder and difficulties with regulating emotion." The psychologist also noted that, through this program, Cadenas would participate in "one of two evidenced-based treatments for PTSD, either Cognitive Processing Therapy or Prolonged Exposure." At the hearing, in accord with section 1170.9, subdivision (e), the court acknowledged that Cadenas would receive, at least, equal jail-time credit for the time he were to spend in the program, and the probation officer urged double credit. Under these circumstances, we conclude that the trial court complied with the requirement of section 1170.9, subdivision (f) to "give

---

[15] We note that in opposing Cadenas's arguments, the Attorney General does not assert forfeiture. Because we decide Cadenas's claim on the merits, we do not need to address his alternative argument that his defense counsel was ineffective for failing to object on the grounds raised in this appeal.

15

preference to a treatment program that has a history of successfully treating veterans" when "making an order . . . to commit [Cadenas] to an established treatment program."

Further, to the extent that Cadenas argues the trial court had an obligation to give preference to the superior court's veteran's court when ordering him into treatment, we reject that argument. There is nothing in section 1170.9 that specifically compelled the trial court to order Cadenas to participate in the county veteran's court or in any other specific treatment program. Rather, the court was only required to give preference to a treatment program that has a history of successfully treating veterans, and the statute explicitly mentions "programs operated by . . . the United States Department of Veterans Affairs"—the operator of the program in which Cadenas participated to fulfill one or more conditions of his probation. (§ 1170.9, subd. (f).)

Relatedly, we reject Cadenas's arguments regarding the lack of a "public safety exception" in section 1170.9, subdivision (f) as inapposite. Nothing in the record here demonstrates that the trial court considered public safety when it gave preference to the VA's residential treatment program over the superior court's veteran's court. Rather, the issue of public safety arose only in the context of the veteran's court's own determination whether Cadenas was eligible for admission under that program's internal criteria. But just as section 1170.9 does not mandate commitment to any specific treatment program, it does not regulate the actions of treatment programs or bar such programs from considering public safety when deciding whom to admit. (See § 1170.9, subds. (a)–(g).) We thus reject any argument that the trial court improperly considered a nonstatutory public safety exception when it acted here under section 1170.9.

Under the facts here, we reject the notion that a statutory violation of section 1170.9, subdivision (f) occurred.

Cadenas alternatively contends that the trial court abused its discretion because "[n]o evidence supported a finding that denying admission to [veteran's court] was the

superior choice with respect to public safety" (capitalization and boldface omitted). Although Cadenas uses the word "admission" in the heading of his claim, in the body of his argument he appears to focus on the trial court's purported refusal to refer him to a treatment program that had a history of successfully treating veterans. Specifically, he states: "In this case, there is simply no support at all for the notion that referring [him] to VTC involved greater danger to the public than referring him to another program (or, as actually happened here, leaving the choice to the probation officer)."

We discern no abuse of discretion by the trial court at any point in the process of sentencing Cadenas. Beginning with the court's transfer of Cadenas's case to Department 10 for the eligibility determination, that transfer occurred at Cadenas's request for a "referral" for eligibility, and he offers no reason why the trial court erred when it did what he asked. In addition, to the extent Cadenas now challenges the ruling of the judge in Department 10 who denied him admission to veteran's court, that ruling was not arbitrary or capricious. The judge reviewed relevant material, heard argument from the parties, and decided the admission issue based on Cadenas's individual circumstances and the superior court's internal criteria for veteran's court eligibility. The record contains ample support for the judge's determination that Cadenas—who had accumulated five DUIs between January 2007 and June 2020—posed a danger or substantial risk to others. Furthermore, we are not persuaded by Cadenas that "there was no evidence that referring [him] to VTC would leave the public more exposed to future drunk driving by [him] than a different referral would." Cadenas's argument seems to ignore that he had been through veteran's court once before (after his 2016 DUI conviction) and reoffended by driving drunk a little more than two years after he completed the veteran's court program. Cadenas's post-veteran's court recidivism is an individualized circumstance that supports denying him readmission and pursuing an alternate approach that might be more successful at rehabilitating him.

17

Similarly, to the extent Cadenas argues that the ultimate probation conditions ordering him to participate in treatment amount to an abuse of discretion, that argument lacks merit. "In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120 (*Carbajal*).) Given Cadenas's history, we conclude the trial court acted within its discretion when it imposed conditions that directed Cadenas to participate in certain treatment programs, including counseling or substance abuse programs and the 18-Month Multiple Offender Alcohol Program.

In sum, Cadenas fails to demonstrate any error by the trial court or the judge presiding in veteran's court with regard to his request to participate in the superior court's veteran's court program.

B. *Probation Conditions*

Cadenas challenges three of his probation conditions (Nos. 9, 15, and 19) on vagueness, overbreadth, and/or improper delegation grounds. He acknowledges that he failed to object in the trial court to any of those conditions but argues that his current claims are cognizable on appeal because they involve facial challenges that present pure questions of law.

The Attorney General "agrees that certain of [Cadenas's] claims, which appear to present purely facial challenges, are properly presented to this court." However, the Attorney General asserts forfeiture as to Cadenas's challenge to condition No. 15. In addition, the Attorney General argues that only one of Cadenas's three claims has merit, namely, the claim challenging condition No. 9.

1. Legal Principles

"The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and, if so, under what conditions." (*Carbajal, supra,* 10 Cal.4th at p. 1120; § 1203.1, subd. (j).) Nevertheless, a "probation condition that imposes limitations on a person's constitutional rights must closely tailor those

limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) Stated differently, a probation condition " 'is unconstitutionally overbroad . . . if it (1) "impinge[s] on constitutional rights," and (2) is not "tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation." [Citations.] The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement.' " (*People v. Arevalo* (2018) 19 Cal.App.5th 652, 656–657.)

"Under the void for vagueness doctrine, based on the due process concept of fair warning, an order ' "must be sufficiently precise for the probationer to know what is required of him [or her], and for the court to determine whether the condition has been violated." ' [Citation.] The doctrine invalidates a condition of probation ' " 'so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.' " ' [Citation.] By failing to clearly define the prohibited conduct, a vague condition of probation allows law enforcement and the courts to apply the restriction on an ' " 'ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' " ' " (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910, quoting *Sheena K.*, *supra*, 40 Cal.4th at p. 890.) "[A] probation condition should not be invalidated as unconstitutionally vague ' " 'if any reasonable and practical construction can be given to its language.' " ' " (*People v. Hall* (2017) 2 Cal.5th 494, 501 (*Hall*).)

In addition, the authority to "impose and require" reasonable conditions of probation rests with the trial court, "as it may determine are fitting and proper." (§ 1203.1, subd. (j).) The court in turn "has authority to empower the probation department with authority to supervise the probation conditions." (*People v. Kwizera* (2000) 78 Cal.App.4th 1238, 1240; see also *People v. Penoli* (1996) 46 Cal.App.4th 298,

19

308 (*Penoli*) ["trial court is poorly equipped to micromanage selection of a [residential drug treatment] program"].) Nevertheless, "[u]nder the separation of powers doctrine (Cal. Const., art. III, § 3), judicial powers may not be delegated to nonjudicial officers. [Citation.] While the probation officer may properly specify the details necessary to effectuate the court's probation conditions, it is the court's duty to determine the nature of the requirements imposed on the probationer." (*People v. Smith* (2022) 79 Cal.App.5th 897, 902 (*Smith*).)

"Even absent an objection, a defendant may, on appeal, argue a condition is unconstitutional if the claim presents a ' " 'pure question[] of law that can be resolved without reference to the particular sentencing record developed in the trial court.' " ' " (*People v. Moran* (2016) 1 Cal.5th 398, 403, fn. 5; see also *Sheena K.*, *supra*, 40 Cal.4th at pp. 885, fn. 5 & 888–889 [facial constitutional challenges permitted regardless of a failure to object at trial].) We review constitutional challenges to probation conditions de novo. (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723.)

2. Analysis

a. Condition No. 9 – Restrictions on Controlled Substances

Probation condition No. 9 states in full: "Totally abstain from the use of alcohol, marijuana, or other controlled substances without the express permission of your probation officer or the court. Do not traffic in, or associate with persons known to you to use or traffic in controlled substances."

Cadenas contends that condition No. 9 is unconstitutionally vague and overbroad because it does not include language limiting its application to non-prescribed controlled substances. He argues, for example, that the condition improperly bars him "from associating with a pharmacist, who is known by everyone to traffic in controlled substances." He suggests that the flaw in the condition can be cured by amending it to read as follows: " 'Totally abstain from the use of alcohol, marijuana, or other *non-prescribed* controlled substances without the express permission of your probation officer

20

or the court. Do not traffic in or associate with persons known to you to use or traffic in *non-prescribed* controlled substances' " (added language in italics).

The Attorney General concedes that Cadenas's argument has merit and appears to agree with Cadenas's proposed modification to the second sentence of the probation condition.

We concur with the parties that the second sentence of the condition is overbroad as written. We further conclude that the second sentence should be modified to reflect that its prohibition extends only to Cadenas's association with persons who use or traffic in controlled substances without a prescription, i.e., unlawfully. (See *People v. Nice* (2016) 247 Cal.App.4th 928, 951–952; *People v. Lopez* (1998) 66 Cal.App.4th 615, 628.) However, for the reasons that follow, we decline to modify the probation condition in the manner that Cadenas suggests.

Regarding the first sentence of condition No. 9, Cadenas makes no persuasive argument why his personal use of controlled substances "without the express permission of your probation officer or the court" should be limited to non-prescribed controlled substances. If Cadenas were to legitimately obtain a prescription for a controlled substance, we presume—as we must—that either his probation officer or the court would reasonably exercise discretion under the current condition and grant Cadenas permission to use that prescribed medication. (See *People v. Olguin* (2008) 45 Cal.4th 375, 383; see also *People v. Balestra* (1999) 76 Cal.App.4th 57, 68.) Thus, we discern no need to modify the first sentence. Similarly, regarding the restriction in the second sentence on Cadenas himself trafficking in any controlled substance (prescribed or not), the existing language is sufficiently precise and reasonably related to a compelling state interest in keeping addictive drugs out of Cadenas's possession. (See *People v. Lindsay* (1992) 10 Cal.App.4th 1642, 1644–1645.) Hence, we conclude that there is no vagueness or overbreadth violation resulting from condition No. 9's failure to distinguish between prescribed and non-prescribed controlled substances as it relates to Cadenas himself.

21

Because we conclude that the second sentence of probation condition No. 9 is overbroad only to the extent that it precludes Cadenas from associating with people who lawfully use or traffic in controlled substances, we modify condition No. 9 to read as follows (new language in italics): Totally abstain from the use of alcohol, marijuana, or other controlled substances without the express permission of your probation officer or the court. Do not traffic in, or associate with persons known to you to *unlawfully* use or traffic in controlled substances.

> b. Condition No. 15 – Participation in Counseling or Substance Abuse
> Program

As stated in the probation report, condition No. 15 provides in its first sentence: "Participate in any counseling or substance abuse program the probation officer deems necessary, including approved residential treatment."[16]

Cadenas contends that this sentence in condition No. 15 improperly delegates judicial authority because it "grants the probation officer unfettered discretion to direct [Cadenas] to participate in any kind of 'counseling' the probation officer deems fit" and "in unlimited quantity." Similarly, Cadenas asserts that the sentence is unconstitutionally vague because, "taken literally," it requires Cadenas "to participate in any form of counseling the probation officer designated, no matter how inappropriate."

---

[16] We note that condition No. 15 as stated in the probation report differs slightly from the corresponding condition listed in the clerk's sentencing minute order. Specifically, as to the first sentence, the minute order provides: "*Enroll in and complete* any counseling or substance abuse program the Probation Officer deems necessary, including approved residential treatment" (italics added). At sentencing, the trial court referenced the terms and conditions of probation as stated in the probation report when it confirmed with Cadenas that he had reviewed, understood, and accepted the terms and conditions of his probation. The court did not read or recite condition No. 15 at sentencing. Thus, we will analyze Cadenas's claim challenging condition No. 15 using the language set forth in the probation report rather than the sentencing minute order. (See *People v. Rodriguez* (2013) 222 Cal.App.4th 578, 586–587, disapproved of on other grounds by *Hall*, *supra*, 2 Cal.5th at pp. 503–504.)

22

Regarding the threshold issue of forfeiture, the Attorney General urges us to bar Cadenas's claim because its resolution purportedly requires consideration of case-specific facts and circumstances. We disagree. Given the nature of Cadenas's arguments, we eschew forfeiture here and will consider the issues raised on appeal as pure questions of law. (See *Sheena K.*, *supra*, 40 Cal.4th at pp. 888–889; *Smith*, *supra*, 79 Cal.App.5th at p. 901.)

Turning to Cadenas's improper delegation argument, we are not persuaded that the court's order directing Cadenas to participate in "any counseling" program that the probation officer deems necessary amounts to a violation of non-delegation principles. Cadenas's argument focuses on the phrase "any counseling." We acknowledge that that phrase, standing alone, is broad. However, when the first sentence of condition No. 15 is read as a whole and in the context of the probation report, it adequately sets forth the nature of the condition and places appropriate boundaries on the probation officer's discretion in choosing counseling programs for Cadenas. More specifically, the additional references in the first sentence of condition No. 15 to "substance abuse program" and necessity (as determined by the probation officer), and the further requirements in that condition regarding an approval for "residential treatment" (presumably by the court), read in the context of Cadenas's admitted struggles with PTSD and sobriety (described in the probation report), together support a more constrained interpretation of any discretion conferred to the probation officer by condition No. 15. If, at some point, the probation officer were to exercise his or her delegated authority to select a counseling program that Cadenas believes is unnecessary or inappropriate, he can seek judicial intervention by moving to modify the probation order to ensure that the counseling program is necessary and properly related to his rehabilitation. (See § 1203.3.) Furthermore, the court's discussion at Cadenas's sentencing hearing of his needs (which in turn would guide the probation department in its supervision of Cadenas), focused on Cadenas's substance use and related treatment.

23

Similarly, the long-term VA residential treatment program that Cadenas was ordered to attend was targeted to his PTSD and substance abuse disorder. Under these circumstances, we decide that the first sentence of condition No. 15 does not violate the separation of powers doctrine. (See *Penoli*, *supra*, 46 Cal.App.4th at p. 308; cf. *Smith*, *supra*, 79 Cal.App.5th at p. 903.)

We likewise reject Cadenas's further contention that the counseling condition is unconstitutionally vague. "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) The counseling condition here does not leave Cadenas or the trial court unable to determine if the condition has been violated. It plainly informs Cadenas that he must participate in counseling that his probation officer identifies for him as necessary. Thus, Cadenas's facial vagueness claim fails.

> c. Condition No. 19 – Restriction on Entry into Places Selling Alcohol

Probation condition No. 19 states in full: "Totally abstain from the use of alcoholic beverages, do not purchase or possess alcoholic beverages, and stay out of places where alcohol is the main item of sale."

Cadenas asserts that this condition is unconstitutionally vague "because it often is not apparent whether alcohol is the main item of sale at an establishment" and the word "places" is ambiguous. He requests that the condition be modified to include an express knowledge requirement in its last phrase.

We are not convinced that condition No. 19 is impermissibly vague on its face. Construing the last phrase of this condition reasonably and practically (see *Hall*, *supra*, 2 Cal.5th at p. 501), the condition refers only to establishments such as bars, taverns, and liquor stores, i.e., locations Cadenas would know are dedicated chiefly to the sale of alcohol. Because scienter is already implied, there is no need to modify the condition to

24

include an express knowledge requirement. (See *Hall*, at p. 503; *People v. Patel* (2011) 196 Cal.App.4th 956, 960–961.) Interpreted thusly, the condition informs Cadenas "what conduct is required or prohibited, and [] enable[s] the court to determine whether [he] has violated the condition." (*Hall*, at p. 500.) Hence, we reject Cadenas's challenge to condition No. 19 and decline to modify it.

C. *Fines, Fees, and Assessments*

Cadenas contends that four fees imposed on him at his sentencing hearing must be stricken or vacated due to recent changes in the law. He also requests that we order the trial court to modify its amended sentencing minute order to itemize all fines, fees, and assessments actually imposed. The Attorney General agrees with Cadenas as to the four court-imposed fees and does not object to an order directing modification of the sentencing minute order.

We decide that the four challenged fees must be vacated. As a condition of Cadenas's probation, the trial court imposed a criminal justice administration fee (Gov. Code, former §§ 29550.1, 29550.2). Under recently enacted Government Code section 6111, "the unpaid balance" of that fee (as of July 1, 2021) "is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Gov. Code, § 6111, subd. (a) [Stats. 2020, ch. 92, § 11]; see *People v. Greeley* (2021) 70 Cal.App.5th 609, 625; *People v. Rowland* (2022) 82 Cal.App.5th 1099, 1124–1125 (*Rowland*).)

As an additional condition of Cadenas's probation, the trial court imposed a $25 administration screening fee (former § 1463.07) and a $55 payment administration fee (§ 1205, subd. (e)). Under recently amended section 1465.9, the balance of the administration screening fee (as of July 1, 2021), and the balance of the payment administration fee (as of January 1, 2022) are "unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (§ 1465.9, subds. (a) &

25

(b); compare Stats. 2020, ch. 92, § 62 with Stats. 2021, ch. 257, § 35 [amending § 1465.9 to include §§ 1463.07 & 1205] & Stats. 2022, ch. 57, § 21.)

Further, separate from the conditions of probation, the trial court imposed a probation services fee of $864 and $81 per month (former § 1203.1b). The balance of the probation services fee (as of July 1, 2021) is "unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (§ 1465.9, subd. (a); see *Rowland*, *supra*, 82 Cal.App.5th at pp. 1124–1125.)

Accordingly, as required by current law, we modify the judgment to vacate the unpaid portions of the four fees as of the specified dates, and further direct the trial court to prepare an amended sentencing minute order reflecting the modification.

In addition, we order the trial court to modify its sentencing minute order to itemize the remaining fines, fees, and assessments. The amended sentencing minute order (dated May 18, 2021) currently restates, incompletely, a probation condition that is listed in the probation officer's report (condition No. 18), which addresses the fines, fees, and assessments. Specifically, the minute order provides: "Pay a fine of $390.00; plus penalty assessments, restitution fine and administrative fees for a total of $1,804.00." The minute order, however, fails to itemize all the fines, fees, and assessments delineated in the probation report and adopted by the trial court at sentencing. This circumstance should be corrected by including in a further amended sentencing minute order an itemization of all the unvacated fines, fees, and assessments that were imposed by the trial court at Cadenas's sentencing hearing and specifying their statutory bases. (See *People v. High* (2004) 119 Cal.App.4th 1192, 1200; *People v. Eddards* (2008) 162 Cal.App.4th 712, 717–718; *People v. Hamed* (2013) 221 Cal.App.4th 928, 937–940.) Accordingly, we direct the clerk of the trial court to prepare a further amended sentencing minute order.

### III. DISPOSITION

The trial court's March 10, 2021 sentencing order is modified as follows:

(1) Probation condition No. 9 is modified to state, "Totally abstain from the use of alcohol, marijuana, or other controlled substances without the express permission of your probation officer or the court. Do not traffic in, or associate with persons known to you to unlawfully use or traffic in controlled substances."

(2) Any portion of the criminal justice administration fee (Gov. Code, former § 29550 et seq.), $25 administration screening fee (former § 1463.07), or probation services fee of $864 and $81 per month (former § 1203.1b) that remained unpaid as of July 1, 2021, is vacated.

(3) Any portion of the $55 payment administration fee (§ 1205, subd. (e)) that remained unpaid as of January 1, 2022, is vacated.

In all other respects, the judgment is affirmed.

The trial court is directed to prepare an amended sentencing minute order to (a) reflect the vacatur of the criminal justice administration fee, probation services fee, payment administration fee, and administration screening fee, and (b) itemize and specify the statutory basis for each unvacated fine, fee, and assessment imposed by the trial court at the March 10, 2021 sentencing hearing.

_____
                              Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian,  Acting P.J.

_____
Wilson, J.

**H049100**
*People v. Cadenas*